HENNINGSEN PRODUCE CO. v. WHALEY, Internal Revenue Collector.

(District Court, D. Montana.   January 8, 1917.)

No. 190.

1. INTERNAL REVENUE ⬤⟲16—ADULTERATION OF BUTTER—REGULATION BY COMMISSIONER OF INTERNAL REVENUE—VALIDITY.

A regulation by the Commissioner of Internal Revenue that butter having 16 per cent. or more of moisture shall be classed as adulterated butter, within Act May 9, 1902, c. 784, § 4, 32 Stat. 194, defining adulterated butter to be any butter in the manufacture or manipulation of which any process or material is used to cause ·the absorption of abnormal quantities of water, milk, or cream, and imposing taxes on manufacturers of such butter, which regulation did not apply to farmers, is invalid, being in excess of the powers of the Commissioner, imposing taxes where not due, and waiving them when due.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. ⬤⟲16.]

2. INTERNAL REVENUE ⬤⟲16—ADULTERATED BUTTER—MANUFACTURERS—LIABILITY FOR TAXES.

In such case, a manufacturer of butter, intending to take advantage of the regulation, attempted to incorporate into its product as much moisture as possible without exceeding 16 per cent., by working over butter containing a small amount of moisture, so that the moisture would be increased practically up to the maximum prescribed by the regulation, notwithstanding the ordinary amount of moisture in butter is considerably less than 16 per cent.   *Held*, that the manufacturer was subject to the tax imposed by the act, being a manufacturer of adulterated butter, because using a process with intent and effect of causing the absorption of abnormal quantities of water, milk, and cream.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. ⬤⟲16.]

At Law. Action by the Henningsen Produce Company, a corporation, against William C. Whaley, as Collector of Internal Revenue of the District of Montana. Judgment for defendant.

John E. Corette, of Butte, Mont., for plaintiff.

Burton K. Wheeler, U. S. Atty., of Butte, Mont., for defendant.

BOURQUIN, District Judge. Plaintiff, assessed as a manufacturer of adulterated butter, seeks recovery of taxes paid, alleging it was not such manufacturer. So far as material here, Act May 9, 1902, § 4 (32 Stat. 194), defines "adulterated butter" to be "any butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream," and imposes taxes on the manufacturer.

[1] Although the act does not so authorize, the Commissioner of Internal Revenue has issued a "regulation" that "butter having 16 per cent. or more of moisture contains an abnormal quantity and is classed as adulterated butter." And the maker, if not a farmer, to whom the regulation is not applied, though the statute contains no exceptions, is assumed to be a manufacturer of adulterated butter and taxed. From the evidence it appears that revenue agents in the markets secured samples of plaintiff's butter, in many of which was found 16 per cent. and more of moisture. Thereupon, because of and relying on the regulation alone, plaintiff was assessed as a manufacturer of adulterated butter, and paid under protest.

Plaintiff contends the regulation is void, relying on U. S. v. 11,150 Pounds of Butter, 195 Fed. 657, 115 C. C. A. 463, which so decides. Defendant, contra, relies on Creamery Co. v. Lemon, 163 Fed. 145, 89 C. C. A. 595, which holds the regulation valid. It is believed that the conclusion, at least, of the former case is right—that the regulation is void. It is more than a rule of procedure and administration, being legislative in character. It would amend, change, annul, expand, and contract the act. Amongst other things, it ignores means, intent, and effect, the very substance of the act, and counts alone on a condition, however produced, contrary to the act. It imposes taxes where not due, and waives them where due. It creates some offenses, and pardons, even licenses, others. The Commissioner has no such power. Neither the act nor general statutes confer it on him.

[2] But there is more to the case. It also appears, and by plaintiff's evidence, that at the vital time it was manufacturing daily about 2,000 pounds of butter, and was buying and selling other butter; that its methods of churning—preparation of cream, temperatures, churn revolutions, washing, salting, and working, any and all of which affect the amount of moisture in the finished product—were not dictated alone by what, under the circumstances, was ordinary, usual, customary, recognized as good practice, and with an eye single to the quality of the butter; in brief, were not normal, but were modified with intent that the butter would contain 15.9 per cent. moisture and all practicable within the 16 per cent. of the regulation, and to the effect that moisture content varied from less to more than 16 per cent.,

but always more than it would have been from normal methods. Plaintiff frankly admits its aim and instructions were not to exceed 15.9 per cent. moisture and to secure all practicable benefit from the regulation; and therein, at the final stage, when "finished," when, as happened, sampling showed moisture substantially lower than 15.9 per cent., the butter was additionally worked, solely to increase, as it did, its moisture content. It is obvious that plaintiff's instructions were, not only not to exceed 15.9 per cent. moisture, but were also to modify normal methods when necessary, to increase moisture to that amount; and this was done. And so done, in "manufacture or manipulation" a "process" was "used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream," resulting in "adulterated butter" within the statute, whether the moisture content was 16 per cent., or more, or less. The determining factor is not any particular percentage of moisture, but the means and intent by which moisture is increased. In one case butter containing 18 per cent. of moisture may not be adulterated; in another case, containing 12 per cent., it may be.

As observed in the first-cited case, butter making eliminates moisture. But the statute must receive a reasonable and practicable construction. And it is believed that any departure from methods appropriate to the circumstances of the particular churning, departure from methods calculated to result in a product of appropriate quality, with intent and effect to increase moisture over what it would have been, but for such departure, has caused "absorption of abnormal quantities of water, milk, or cream," within the statute, whether the increase be due to retention of moisture throughout, or by elimination and reincorporation. Intent *and* effect, not "or," the statute must be read; for intent without effect could not produce adulterated butter. It would seem normal methods of manufacture generally result in about 14 per cent. moisture. The butter plaintiff purchased ranged from 8 to 17.5 per cent., and it appears it worked over at least that containing 16 per cent. and more, to reduce moisture just below the 16 per cent. of the regulation and to what it terms the "legal limit."

From the evidence it appears the regulation is responsible for startling consequences. Manufacturers take advantage of it to deliberately increase moisture, it may be from less than 1 up to 3 per cent. and more, to a point short of the regulation's 16 per cent. It follows a tremendous amount of water is sold at butter prices, doubtless aggregating millions of dollars annually, which would not be, but for the license seen in the regulation—a curious and injurious result from administration of a beneficial law. And although an occasional manufacturer, who oversteps the "legal limit" and is detected, pays a tax, it is probably not cents to the treasury where the people pay dollars for water. The regulation being void, even as its mere violation does not subject the manufacturer to the statute, obedience to it does not protect those who violate the statute.

From what precedes, it appears that plaintiff was a manufacturer of adulterated butter when the taxes involved were levied and paid, and so it is not entitled to recover them.

Judgment accordingly.